UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MILTON DIAZ,                                          04-CV-0840E(Sr)
TIM OSTRANDER,
ANTHONY CAPIZZI,
ANDREW SECOR and
JEFFREY HOCHMUTH, Individually and
   on Behalf of All Others Similarly Situated,          MEMORANDUM

                 Plaintiffs,                              and

        -vs-                                          ORDER[1]

ELECTRONICS BOUTIQUE OF AMERICA, INC.
and ELECTRONIC BOUTIQUE HOLDING CORP.,

              Defendants.

---

     Plaintiff Milton Diaz commenced this action on October 13, 2004 against his

former employer, defendants Electronics Boutique of America, Inc. and Electronics

Boutique Holding Corp. (collectively "EB").   On November 24, 2004 plaintiff Tim

Ostrander filed a consent to become a party plaintiff and proposed to be a named

representative for a subclass of EB Store Managers ("SMs") and Diaz filed a consent

to become a party plaintiff and proposed to be a named representative for a subclass

of EB Assistant Store Managers ("AMSs").[2]   Plaintiffs allege that EB routinely and

---

[1]This decision may be cited in whole or in any part.

[2]On April 18, 2005 Anthony Capizzi filed a consent to become a party plaintiff and proposed to represent others similarly situated and Jeffrey Hochmuth and Andrew Secor did so September 30, 2005.  This Order does not address these parties because they were not included in plaintiffs' papers and, even if they were included, such would not alter the reasoning or the holding.

intentionally failed to pay its store employees minimum wages and overtime pay in violation of (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, ("Federal Claims") and (2) Article 19 of New York Labor Law ("NYLL") and its implementing regulation, Section 142-2.2 of the New York Compilation of Codes, Rules and Regulations ("NYCCRR"), Title 12 ("State Claims").  On December 22, 2004 plaintiffs moved for conditional certification and facilitation of notice of their Federal Claims "on behalf of all current and former [EB] employees who did not receive overtime pay at the rate of time and one half for any hours worked in excess of 40 per week and/or who were otherwise not compensated for work performed." (Pls.' Mem. Supp. Mot. Conditional Certification at 1-2.)  On March 17, 2005 plaintiffs, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("FRCvP"), moved for class certification of their State Claims on behalf of "all current and former [EB] [SMs] and [ASMs] who worked in any of [EB's] New York State stores from October 13, 1998 to the present." (Pls.' Mem. Supp. Mot. Class Certification at 1.)  On March 11, 2005 EB moved to dismiss plaintiffs' State Claims.  All three motions are pending before the Court and, for the reasons set forth below, all three motions will be denied.[3]

---

[3]Plaintiffs in their motions also request an order from the Court (1) authorizing notification to all potential class members, (2) directing EB to provide plaintiffs with the names and residences of all potential class members, (3) requiring EB to publicize the action and (4) prohibiting EB from threatening, harassing or retaliating against those seeking to join the action. Because the Court will deny certification of plaintiffs' Federal and State Claims, notice to and information about potential class members will not be necessary.  The Court, furthermore, need not prohibit EB from threatening, harassing or retaliating because the law already prohibits such conduct.

The facts, for the purpose of the pending motions, are found as follows and are undisputed except where otherwise noted.  EB is a retail chain that specializes in the sale of video game hardware and software and personal computer entertainment software and accessories.  EB has more than 1,460 stores nationwide, 98 of which are located in New York State.  EB stores are located in rural, urban and suburban areas, range from 422 to 5,000 square feet and earn between $514,999 and $3.5 million in annual sales.  EB stores are divided into 112 districts, each consisting of 15 to 18 stores and each with a District Manager who supervises the SMs in the district.  Each EB store has an SM — like Ostrander — who receives a flat annual salary, is exempt from overtime pay, is responsible for the daily operations of the store and ensures that each employee reviews his or her timesheet and is paid for all hours worked.   Each SM supervises anywhere from three to twelve employees and may manage his or her own store while also supervising SMs in other stores.  EB also employs over 1,375 ASMs — like Diaz — and nearly 4,700 Sales Associates ("SAs") — 90 percent of whom work part-time.  ASMs and SAs are paid at an hourly rate and thus are nonexempt from receiving overtime pay.

Both plaintiffs are former employees of the Blasdell, N.Y. EB store where Ostrander was Diaz's manager.  Plaintiffs first claim that Ostrander and other SMs were misclassified as exempt and thus wrongly denied overtime compensation because (1) they have "little, if any, significant discretion" in operating the store, (2) their "primary function" is not managing the store and (3) they spend nearly 80

percent of their time selling merchandise. (Pls.' Mem. Supp. Mot. Class Certification at 9.) Plaintiffs contend that, although Ostrander was paid a salary based on working 40 hours per week, he typically worked between 60 and 70 hours per week without receiving additional compensation. Plaintiffs further allege that SMs share similar experiences due to the significant control EB exercises over all aspects of the operations of stores.

Additionally, plaintiffs contend that Diaz, although classified as a nonexempt ASM, was not compensated for the overtime hours he had worked, which averaged ten to twelve per week. Plaintiffs allege that it was EB's practice to understaff the Blasdell store by allocating insufficient payroll hours, which required Ostrander and Diaz to work uncovered shifts and resulted in their working more than 40 hours a week without receiving adequate overtime compensation. Ostrander allegedly attempted to compensate Diaz by allowing him to take time off in exchange for overtime hours worked, but such was often impossible due to understaffing of the store. Moreover, plaintiffs claim that Diaz's hours were manually adjusted to comply with EB's policy restricting overtime pay. According to plaintiffs, EB was aware of these allegedly illegal wage practices due to its advanced information technology system with centralized control and monitoring of payroll and hours worked. Thus, plaintiffs claim that EB's refusal to pay overtime for hours worked in excess of 40 hours per workweek was willful and EB persuaded its employees — allegedly

through intimidation and empty promises of advancement — to work without adequate compensation, all in violation of federal and state wage laws.

Plaintiffs first move for class certification of their Federal Claims under FLSA §216(b), alleging that they were deprived of minimum wages and overtime pay in violation of the FLSA.  In particular, plaintiffs claim that EB engaged in a common scheme violating the FLSA by (1) misclassifying SMs as exempt from federally mandated wage laws, (2) requiring its employees to work hours in excess of 40 per workweek without compensation, (3) insisting that all employees clock-out prior to cleaning and closing the store — which often take over an hour to complete —, (4) requiring its employees to enter payroll early on Saturdays to ensure that employees are paid only the pre-determined number of scheduled work hours and (5) forcing SMs to "volunteer" their time to conduct inventories at other EB stores.

The FLSA requires covered employers to, *inter alia*, pay their employees at least the governing minimum wage, 29 U.S.C. §206, and overtime wages, at the rate of time and one-half, for hours in excess of 40 hours worked in a single week.  29 U.S.C. §207.[4]   Exempt, however, from the FLSA's overtime requirements are employees who are "employed in a bona fide executive, administrative, or

---

[4]The FLSA states, in pertinent part:
"[N]o employer shall employ any of [its] employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1).

professional capacity".  29 U.S.C. §213(a)(1).  An "employee employed in a bona fide

executive capacity" is one, *inter alia*, "[w]hose primary duty is management of the

enterprise in which the employee is employed or of a customarily recognized

department or subdivision thereof" and "[w]ho customarily and regularly directs the

work of two or more other employees".  29 C.F.R. §541.100.  "Concurrent performance

of exempt and nonexempt work does not disqualify an employee from the executive

exemption".  29 C.F.R. §541.106.[5]  "Determining whether an employee is exempt is

extremely individual and fact-intensive, requiring 'a detailed analysis of the time

spent performing administrative duties' and 'a careful factual analysis of the full

range of the employee's job duties and responsibilities.'" *Mike* v. *Safeco Ins. Co. of

Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (citation omitted).

---

[5]29 C.F.R. §541.106 states, in pertinent part:

"(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

(b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves."

The FLSA provides a mechanism whereby plaintiffs can bring a collective action on behalf of themselves and other employees who are similarly situated. 29 U.S.C. §216(b).[6] Plaintiffs have the burden of demonstrating that they are "similarly situated" to members of their proposed collective action. *Hoffmann* v. *Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). To meet this burden, plaintiffs must "mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ibid*. A similar situation exists if there is a factual nexus between Diaz and Ostrander's situations and the situations of other current and former employees whom plaintiffs seek to join as putative members of the collective action. *Id.* at 261-262.

Plaintiffs, therefore, must demonstrate that Ostrander and Diaz are similarly situated to a putative class consisting of nonexempt SAs and ASMs as well as exempt SMs. Plaintiffs assert similar situation based on the allegation that all putative class members were victims of EB's "company-wide plan of not paying their employees overtime or other wages for work performed." (Pls.' Mem. Supp. Mot. Conditional Certification at 10.) EB, in opposing certification of plaintiffs' Federal

---

[6]The FLSA states, in pertinent part:

"An action to recover *** liability *** may be maintained against any employer *** in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b).

Plaintiffs have filed consents to become parties plaintiff.

Claims, argues that (1) Ostrander and Diaz are not similarly situated to one another because Ostrander is exempt and Diaz is nonexempt and (2) plaintiffs are not similarly situated to other EB employees — SMs, ASMs or SAs — throughout the country because of the differences among the many stores.  In response, plaintiffs claim that Ostrander and Diaz are similarly situated to each other and to proposed class members because (1) they are all victims of EB's common practice of failing to pay overtime and other wages and (2) SMs and ASMs had virtually identical job descriptions until EB's recent alterations.

The gravamen of Ostrander's claim, as distinct from that of Diaz's, is that EB avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks.  Ostrander's claim and the claims of other SMs thus will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas Diaz's claim and the claims of ASMs and SAs will involve an examination of hours worked, payroll records and EB's knowledge and/or permission of the alleged overtime hours worked.  As such, Ostrander and Diaz are not similarly situated to one another for no factual nexus exists between their situations.  *See, e.g., Davis* v. *Lenox Hill Hosp.*, 2004 WL 1926086, at *7 (S.D.N.Y. 2004) (holding that the plaintiff, a nurse in an exempt program claiming denial of overtime wages, was not similarly situated to nonexempt nurses); *Mike*, at 220-221 (denying class certification where the plaintiff claimed that he was misclassified as exempt "because the proof in th[e] case [was] specific to the

individual [and] \*\*\* any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the regulations on an individual basis \*\*\* [and] engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]"); *Morisky* v. *Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498-499 (D.N.J. 2000) (finding that the plaintiffs' claim that the defendant's "common scheme" was denying them overtime and thus making the exempt and nonexempt plaintiffs similarly situated was, in fact, "really challenging \*\*\* defendant's determination that they are exempt under the FLSA", which would result in certification of "a class based upon [plaintiffs'] own belief as to which employees do not satisfy any of the exemption criteria- -the very issue to be litigated in th[e] action [and one that if] litigat[ed] \*\*\* as a collective action would be anything but efficient").

Moreover, just as a determination of Ostrander's exempt or nonexempt status requires a detailed factual analysis of his daily activities and responsibilities, so does a determination of every individual SM's exempt or nonexempt status. *Morisky*, at 499 ("The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis."). The responsibilities of SMs vary in number and types of employees supervised and in types of stores managed — in terms of physical space, sales volume and geographic location. Although SMs share the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detailed

analysis of each SM's duties is required, making class treatment inappropriate. *See* 29 C.F.R. §541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); *Cooke* v. *Gen. Dynamics Corp., Elec. Boat Div.*, 993 F. Supp. 56, 61 (D.Conn. 1997) ("Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."). Plaintiffs, therefore, cannot make the necessary modest showing that Ostrander is similarly situated to other SMs.

Diaz's claim, likewise, is particular to his experiences at the Blasdell store. Plaintiffs assert that Diaz's timesheets were altered so that EB would not be required to provide overtime pay. First, plaintiffs do not contend that such was at the direction of EB management or in conjunction with a clear EB policy. Rather, plaintiffs simply allege that ASMs' overtime work must be approved and, thus, EB had a policy of not paying for overtime work. This is insufficient to suggest that all ASMs and SAs were subject to a policy of requiring but not compensating employees for overtime work. *Compare Hoffmann*, at 261-262 (finding that the plaintiffs had made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" where the defendant had admitted that it had a policy of requiring managers to

reduce their compensation and managers were required to sign a form agreement explicitly authorizing wage deductions), *with Holt* v. *Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-1275 (M.D.Ala. 2004) (finding that, where the defendant's allegedly inaccurate exempt classification of store managers and assistant store managers was the formal policy allegedly in violation of the FLSA, certification of the collective action would require an inquiry "as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation"; hence, "the Plaintiffs employed as Store Mangers or Assistant Managers, *** even within the region ***, are not similarly situated").

Second, Diaz's allegations — *viz.*, that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked — are too individualized to warrant collective action treatment. *Lawrence* v. *City of Philadelphia, P.A.*, 2004 WL 945139, at *2 (E.D.Pa. 2004) ("[T]he 'off-the-clock' claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated.").  The court in *Lawrence* held that the questions of fact would

most likely differ for each plaintiff, as each worked in different locations with different supervisors, and thus would be unduly burdensome to manage as a collective claim. *Ibid.* Similarly here, Diaz's off-the-clock claims require an examination by the Court of when he was scheduled to work, when he actually worked, whether he was paid for such and whether Ostrander altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member. Taking plaintiffs' allegations as true, altering Diaz's timesheets may have been the Blasdell store's method of dealing with overtime issues, but such may not have been the case at other stores. All ASMs, therefore, have not been shown to be similarly situated and plaintiffs' speculative allegations do not rescue their claims from being "insufficiently specific beyond their own [respective] circumstances." *See Levinson* v. *Primedia Inc.*, 2003 WL 22533428, at *1-*2 (S.D.N.Y. 2003) (holding that employees who claimed that they were misclassified as independent contractors had failed to demonstrate that putative plaintiffs at other sites were "similarly situated" because "they failed to support [their] legal conclusion with a factual showing that extends beyond their own circumstances" — in particular, "[w]hile plaintiffs ha[d] provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates, they ha[d] failed to make a sufficient showing that the same was true for other potential plaintiffs"); *Stubbs* v. *McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004) ("While ∗∗∗ plaintiff [need not] come forward with evidence of actual proof

of a decision, policy or plan, the initial *ad hoc* FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone."); *Holt*, at 1272 ("[P]laintiffs are not similarly situated if the action relates to circumstances personal to the plaintiff rather than a generally applicable policy.").

As for claiming similar situation to SAs, for the reasons mentioned *supra*[7] and because 90 percent of SAs worked part-time and thus overtime laws do not apply to them, Diaz and Ostrander are not similarly situated to SAs.  Plaintiffs, therefore, fail to show that Ostrander and Diaz are similarly situated to one another, that Ostrander is similarly situated to the proposed class of ASMs, that Diaz is similarly situated to the proposed class of SMs and that either is similarly situated to SAs and their motion for conditional certification of their Federal Claims will be denied.[8]

Turning to plaintiffs' motion for class certification of their State Claims, plaintiffs assert violations of NYLL §§160 *et seq.*, 190 *et seq.* and 650 *et seq.* and seek class certification of their State Claims pursuant to FRCvP 23.  NYLL §652 delineates

---

[7]Plaintiffs are not similarly situated to each other, to SMs or to ASMs; thus, logically, they are not similarly situated to SAs.

[8]Plaintiffs mention that, if the Court finds "significant differences" between SMs and ASMs, it can divide the class into subclasses.  (Pls.' Mem. Further Supp. Mot. Conditional Certification at 19.)  Plaintiffs, however, cannot show sufficient similarity to certify a class of SMs and ASMs, nor can they show sufficient similarity to certify a class of just SMs or just ASMs. Plaintiffs urge that, at this preliminary stage, the Court should certify the class for notice and discovery purposes and leave further determinations to a later date.  *See, e.g., Hipp* v. *Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-1219 (11th Cir. 2001).  Courts that have certified classes at the initial stage with the possibility of decertification or subclassification have done so when discovery may have revealed latent differences in the putative class.  *See, e.g., Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003).  In the instant case, however, significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims.

a minimum wage schedule and NYLL §655 provides for overtime rates and requirements, which, pursuant to the implementing regulation, apply the FLSA standards in determining exemptions from New York State overtime laws.   12 NYCCRR §142-2.2.[9]   Thus, plaintiffs have the same obstacle with respect to Ostrander's claim — *viz.*, that a determination of nonexempt status requires an inquiry into the specifics of Ostrander's job and a similarly individualized inquiry into the specifics of each SM whom plaintiffs are seeking to join.

FRCvP 23 sets forth the requirements for bringing and maintaining a class action in federal court and plaintiffs bear the burden of proof on a motion for class certification under FRCvP 23.   *Monaco* v. *Stone*, 187 F.R.D. 50, 59 (E.D.N.Y. 1999).   "In determining the propriety of a class action, the question is not whether ∗∗∗ plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [FRCvP] 23 are met."   *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).   Although the Court will accept all of plaintiffs' allegations as true and avoid conducting an inquiry into the merits, "the decision whether to certify a class may involve considerations related to the factual and legal issues that comprise

---

[9]12 NYCCRR §142-2.2 states, in pertinent part:
"An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of ∗∗∗ the [FLSA] ∗∗∗.   In addition, an employer shall pay employees subject to the exemptions of section 13 of the [FLSA] ∗∗∗ overtime at a wage rate of one and one-half times the basic minimum hourly rate."

12 NYCCRR §142-2.4 provides that an employee shall receive one hour's pay at the basic minimum hourly wage rate for any day in which the spread of hours exceeds ten hours or there is a split shift or both situations occur.

[plaintiffs'] cause of action [and] the presence of an affirmative defense should be considered in determining whether class certification is appropriate."  *Noble* v. *93 Univ. Place Corp.*, 224 F.R.D. 330, 337 (S.D.N.Y. 2004) (quotations and citation omitted).

Plaintiffs must demonstrate that under FRCvP 23(a) the putative class has (1) sufficient numerosity to make individual joinder impracticable, (2) commonality of questions of law or fact, (3) typicality of claims and (4) representatives who fairly and adequately protect the interests of the class.  Second, because plaintiffs move for class certification under FRCvP 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other available methods for fair and efficient adjudication of the controversy."  FRCvP 23.[10]  The numerosity

---

[10]FRCvP 23(a) and (b) states, in pertinent part:

"**(a) Prerequisites to a Class Action.** One  or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

        \*        \*        \*        \*        \*

    **(3)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

element "requires a finding that the numerosity makes joinder of all class members 'impracticable.'" *Robidoux* v. *Celani*, 987 F.2d 931, 935 (2d Cir. 1993).   A class comprised of more than forty members generally satisfies numerosity.  *Consol. Rail Corp.*, v. *Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Court will assume *arguendo* that plaintiffs have met the numerosity requirement of FRCvP 23(a)(1).

Next, plaintiffs must demonstrate commonality — *viz.*, that there are "questions of law or fact common to the class."  FRCvP 23(a)(2).  Plaintiffs' claims and the class claims must be "so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Southwest* v. *Falcon*, 457 U.S. 147, 158 n.13 (1982).  For the same reasons that plaintiffs cannot meet the similarly situated requirement of class certification under the FLSA — to wit, plaintiffs' factual allegations are specific to only Ostrander and Diaz and an individual factual determination is necessary to distinguish between exempt and nonexempt employees, to determine if an SM should be exempt or nonexempt and to determine if an ASM worked off-the-clock —, plaintiffs fail to meet the commonality requirement of FRCvP 23(a).  *See Davis*, at *5 (finding that "categories of employees whose jobs were governed by different pay and benefits policies" — to wit, those who are allegedly incorrectly classified as exempt and those who are classified as nonexempt — do not share common issues of law or fact and thus cannot meet the commonality requirement of FRCvP 23(a)); *Morisky*, at 500 (holding that "the question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities"

and claims so "individual in nature" do not meet the commonality requirement of FRCvP 23(a)).  As stated *supra*, both Ostrander's and Diaz's claims are individual in nature, present factual questions specific to each and separate from the other's and from those of proposed class members.  Plaintiffs admit that the commonality inquiry is one that asks "whether the common questions are at the 'core' of the cause of action alleged" and that such is the case when the "legal or factual questions linking class members are substantially related to the resolution of the litigation."  (Pls.' Mem. Supp. Mot. Class Certification at 15 (citations omitted).)  Plaintiffs claim that the factual and legal issue is whether EB properly compensated its employees.  This is clearly, as found *supra*, an oversimplification and misstatement of the issues.  The factual issues with respect to Ostrander and SMs are based on their daily activities and responsibilities and with respect to Diaz and ASMs arise from their hours scheduled to work and actually worked.  The legal issues with respect to Ostrander and SMs are based on the FLSA's definition of exempt employees and with respect to Diaz and ASMs focus on timesheets and authority to work overtime.  Therefore, the commonality requirement of FRCvP 23(a) is not met.

FRCvP 23(a) also conditions class certification on plaintiffs establishing that the legal positions of the representative parties — Ostrander and Diaz — are "typical" of the absent class members.  To be typical, "claims of the class representatives [must] be typical of those of the class, and [occurs] when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson* v. *Metro-*

*North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quotations and citation omitted); *see also Hoxworth* v. *Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (finding that the typicality requirement is met if the plaintiffs' claims "arise[] from the same event of practice or course of conduct that gives rise to the claims of the class members, and ∗∗∗ [are] based on the same legal theory").   Class certification may not be granted "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."   *Baffa* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (citation omitted).   Again, plaintiffs' claims are not typical of each other or of those of the proposed class.   As the courts in *Davis* and *Morisky* held, the individualized nature of claims alleging incorrect exemption status preclude meeting the typicality requirement.   *See Davis*, at *6; *Morisky*, at 500.   Ostrander's misclassification claim is factually and legally different from Diaz's off-the-clock claim and warrant different defenses from EB.   *Noble*, at 343 ("[W]here [unique] defenses ∗∗∗ threaten[] to become the focus of the litigation, the plaintiff cannot be considered 'typical' of the class.") (citation and quotations omitted). Furthermore, as explained *supra*, Ostrander's alleged reasons for claiming to be misclassified arises from a different course of events — *viz.*, those particular to the Blasdell EB store — than those that may cause another SM to be misclassified.   The same holds true for Diaz's claim as applied to other ASMs — *viz.*, the reasons why he was allegedly not compensated for off-the-clock overtime work is likely different from why another ASM performed

and was not compensated for off-the-clock work. FRCvP 23(a)'s typicality requirement, therefore, has not been met.

The final FRCvP 23(a) requirement — adequacy — tends to merge with the commonality and typicality requirements. *Amchem Prod. Inc.* v. *Windsor*, 521 U.S. 591, 626 n.20 (1997). "[C]lass representative[s] must *** 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625-626 (citation omitted). Again, Ostrander and Diaz did not suffer the same injury inasmuch as Ostrander was allegedly misclassified and Diaz was allegedly required to work off-the-clock. *See Davis*, at *6 (finding that the plaintiff "does not possess the same interests and has not suffered the same injuries as other members of the purported class" because of the difference in their exemption status). As the claims of each individual SM and ASM also vary, Ostrander and Diaz are not adequate representatives of a class, or classes, with such highly individualized claims. *See Mike* v. *Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 53 (D.Conn. 2004) ("The same reasons that preclude [plaintiff] from proceeding as a collective action under the FLSA preclude him from defining a tenable class under [FRCvP] 23. *** [N]o benefit is derived from proceeding as a class action because class membership is not founded upon any Safeco policy or other generalized proof, but rather on the fact-specific determination of each individual plaintiff's day-to-day tasks."). Plaintiffs, therefore, have failed to meet the

requirements of FRCvP 23(a) and their motion for certification of their State Claims

will be denied.[11]

Turning to EB's motion to dismiss plaintiffs' State Claims, EB claims that (1)

a class action under NYLL would violate the Rules Enabling Act ("REA") on a variety

of grounds and (2) there is no New York State overtime statute and the

corresponding regulation, 12 NYCCRR §142-2.2, is thus illegitimate.  This Order will

deny certification of plaintiffs' State Claims and thus EB's REA claim will be moot.

As to EB's claim that there are no overtime laws in New York State, EB cites three

cases — *Hornstein* v. *Negev Airbase Constructors*, 488 N.Y.S.2d 435 (2d Dep't 1985),

*Gallegos* v. *Brandeis Sch.*, 189 F.R.D. 256 (E.D.N.Y. 1999) and *Ballard* v. *Cmty. Home

Care Referral Serv., Inc.*, 695 N.Y.S.2d 130 (2d Dep't 1999) — in support of its claim.

The court in *Hornstein* stated that "New York does not have a mandatory overtime

law" without citing to a prior decision. 488 N.Y.S.2d at 437.  *Gallegos* states the same

and cites *Hornstein* for the proposition.  189 F.R.D. at 259.  Neither the *Hornstein* nor

the *Gallegos* decision explains or justifies the proposition.  The court in *Ballard*, on

the other hand, explained that, although "[t]here are no provisions governing

overtime compensation in the New York State Labor Law[,] *** the Commissioner of

Labor has the power to *** appoint a wage board *** [who] may recommend such

regulations as it deems appropriate with respect to, *inter alia*, overtime rates ***."

695 N.Y.S.2d at 131.  The court continued to explain that, "[i]n accordance with these

---

[11]As plaintiffs' have failed to meet the requirements of FRCvP 23(a), there is no need to continue the analysis as to FRCvP 23(b)(3).

empowering statutes, the Commissioner of Labor determined that some form of overtime compensation was appropriate and issued the Miscellaneous Wage Order found at [NYCCRR] 142-2.2." *Ibid.* Thus, the case that EB claims supports its position, in fact, directly conflicts with it. Furthermore, subsequent to *Hornstein* and *Gallegos*, the Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL §650 *et seq.* and that implementing regulation 12 NYCCRR 142-2.2 carries the force of the law. *See, e.g., Zheng* v. *Liberty Apparel Co. Inc.*, 355 F.3d 61, 78 (2d Cir. 2003) (upholding district court's analysis of the plaintiffs' state overtime claims under 12 NYCCRR 142-2.2 based on the "same analysis" as applied under the FLSA); *Mascol* v. *E & L Transp., Inc.*, 2004 WL 1541045 (E.D.N.Y. 2005) (granting the plaintiffs' motion for class certification of a class of drivers allegedly not paid overtime wages in violation of NYLL and its implementing regulations, 12 NYCCRR §142-2.2).

Accordingly, it is hereby **ORDERED** that plaintiffs' motion for conditional certification of their Federal Claims is denied, that plaintiffs' motion for class certification of their State Claims is denied and that EB's motion to dismiss is denied.

DATED:     Buffalo, N.Y.

              October 13, 2005

                        _____
                         */s/ John T. Elfvin*
                         JOHN T. ELFVIN
                         S.U.S.D.J.